Our next case, Alpizar-Fallas v. Favero Good morning, Your Honors. I'm Charles Grimaldi from Brock-Eichler. I apologize for my tardiness to the panel as well as to my officer. I'm confident that the panel is familiar with the facts and the law in this case. I'm confident they're familiar with the facts because it derives out of a relatively simple occasion of a rear-end automobile accident. We are well aware. And the uniqueness is both parties insured by the same insurance carrier. I'm confident that the panel is aware of the law because the debate in this case is essentially between the applicability of an opinion by Judge Rendell and an opinion by Judge Vineski. And I'm stuck in the middle. Stuck in the middle, Judge. It's a good position to be in. We believe in Rasmussen. Also opinion of the New Jersey Supreme Court. Correct. And I think it all starts with the Lemondela Court, in which I believe led the Weiss Court to conclude appropriately that in approaching the applicability of the Consumer Fraud Act, which the District Court refused to find in this case, you must approach it assuming it applies. Well, where did Judge Schipp go wrong? I think Judge Schipp did not begin, in the first case, in listening to the court in Weiss. Judge Schipp went wrong in evaluating the applicability of consumer fraud to this scenario. Or did he not really read the complaint properly? Well, Judge Schipp found that this was a denial-of-benefit issue. Correct. And it's just flatly not a denial-of-benefits. It's so much more than a denial-of-benefits case, it begs the question of what complaint the judge was reading. Because in this case, there's no question that the scenario alleged in the complaint is that by using the status of a relationship as being the plaintiff's insurance company, the insurance company representative met with the injured party the day after the accident and induced the plaintiff to sign a comprehensive release. Not just about their own benefits, but restricting and in fact eliminating the ability to sue anybody. Wait, wait. Why don't we go to the language of the release itself? I'm sorry, Judge? Can we go to the language of the release itself? Because I'm not so sure it's as broad as you say it is. Sure. I think the release releases claims against the adverse driver and everybody. And we can point in the appendix to the release language itself. Judge, I don't think that certainly was not any issue focused on by the district court that this was a limited release. In fact, it's a comprehensive release. And it was not defended in this case by progressives standing before the court and saying, no, we don't interpret that release as a full release. But is it all about the release or is it about the allegations of the complaint as to what happened on that day as the allegations of the deception and the misrepresentation and the representation that this was expediting your claim and your signature is necessary to process the property damage, expressly represented it would expedite, relied on the express false representations. I mean... All of that, Judge, amounts to fraudulent conduct in connection with the execution of the obligation of the insurance company to its insured. And absolutely right. All of those allegations... This could only arise in the context of the fact that she was insured by progressives as well as Vivero was insured. Well, that's what's alleged in this case, Judge. This is particularly a punitive class comprised of folks involved in accidents where they're both insured, both the accident victim as well as the other party involved in the accident. Is that alleged in the complaint? Yes, it is, Judge. That she... Both she and he are insured by progressives? Yes. And what... Speaking of what's alleged in the complaint, what can you point us to that shows that it was pleaded that she released her first party claim of progressives? Only the release itself, Judge. The... There's nothing in the language of the complaint itself, is there, that... I mean, the complaint talks about releasing claims against Vivero, but it doesn't talk at all, does it, about releasing claims against progressives? I think a fair reading of the release, and perhaps that's where Judge Vineski was going, is that in presenting that release to the insured on the guise that it was adjusting only the damage to their motor vehicle, they were, in fact, releasing claims against the liable party and all parties. Who... Are you suggesting... The release itself, I'm looking at the release now, says, Hereby for myself and others, release acquit and forever discharge Frank Vivero of and from any and all claims, actions, causes of actions, et cetera. And no other parties mentioned in the release. Right. Where do you have the, I'm releasing progressive from? Well, the entire language of the release, Judge, and it's 830, just for the record, releasing, it does specifically mention on their behalf as well as the heir, successors, et cetera, and any other persons, and they forever release Frank Vivero of any and all expenses, hospital, medical, nursing expenses, accrued, unaccrued claims, loss of consortium, et cetera, including personal injuries. So it's fully releasing an action... Vivero. Correct. Fully releasing the right of a person injured in an automobile accident to release another party. Right. And that's what I'm asking you about. You talk in terms of as if there was also a release of the first party claim, but I'm not seeing it in the release. I'm not seeing it in the complaint. Where do you get it? Judge, it's fully releasing the claim against the adverse party. Vivero. Correct, Judge. So then that's a third party claim. Correct. So is there no place in the complaint or in the release where the first party complaint, the first party claim is being released? That it's releasing their own first party claim. Other than mentioning the types of claims it's releasing against Vivero, it does not. It doesn't mention the insurance company. It doesn't mention PIP benefits or other benefits it would have under the policy. So it should be arguably still theoretically at least entitled to benefits from Progressive. The PIP benefits. What they wouldn't be entitled to is any benefits that are derivative of a release given to the other party. For instance, underinsured or uninsured motorist coverage. We know it wouldn't be uninsured. It would be underinsured. If you release the tortfeasor, you are in fact releasing your claim for underinsured motorist benefits against your own insurance carrier. Unless the insurance carrier consents. Was a claim ever filed for benefits? No. The claim was not filed. This lawsuit was filed. So technically you'd say there was never any denial of benefits because there was never any claim? There was never a denial of benefits case, Judge. Now how about for injury? How do we measure the pecuniary harm then? I'm sorry, Judge? How do we measure the pecuniary harm? Well, I think the standard here is for us to allege an ascertainable loss. And the ascertainable loss of a party who has, the day after an accident where they alleged personal injuries, releasing the tortfeasor in return for $400. I think the loss is obvious here, Judge. We're releasing a claim that hasn't even been asserted yet because this person allowed the insurance company representative on the guise that this was their insurance company representative and adjusting a property damage loss, that in fact they released a much greater loss. Well, and there's nothing in the complaint about her having received anything in return? Correct, Judge. So you're saying the allegations from 17 to 21 of the complaint are sufficient in terms of injury and damages? No, I don't think they're deficient, Judge. They're sufficient. Oh, sufficient. I think they are, Judge. Weiss was about the release of a first-party claim, right? It was a claim that fraudulently the insurance company was denying coverage when they perceived that they were going to be high-value claims. It was a first-party claim, right? Okay. Why is the reasoning in Weiss such that it should be extended here to a third-party claim? I think it's a distinction without a difference, really, Judge. And really, the answer is, what is the Consumer Fraud Act all about? And the Weiss court said, or New Jersey Supreme Court guided, that you start any discussion of applicability of the Consumer Fraud Act is that it applies. And if it's not going to apply, the burden is on the insurance company to come forward and say, here's how the Consumer Fraud Act materially conflicts with other comprehensive regulations that affect the insurance business. The insurance company hasn't done that at all in this case. There's zero of that in the record, Judge. Well, and if looking at Lama Leto, they dispel the notion that really CFA conflicts with a lot of other... Correct. Correct. And it doesn't. And in Weiss, it took a far more difficult challenge. It applied RICO violations on top of a complex insurance scheme, and along the way, found that consumer fraud also would apply. So I think, in general, Judge, I think this was just a misinterpretation of the broad palette that Consumer Fraud Act provides consumers in New Jersey. And in this case, with specific allegations of fraud alleged, the district court should have deferred to those allegations, and at least allowed the case to proceed through discovery. What is your response to the concern raised that this actually undermines the statutory and regulatory framework that the state has set up to deal with insurance-specific goods in a very complex area of the law, and lots and lots of people making claims all the time. And if you can tell an insurance company, if you can sue an insurance company under the guise of providing you with benefits, that it's going to be a bit chaotic and undermine the statutory regime. Well, I guess I'd answer a question with a question. Tell me the specific statutory regime that's conflicted with. But you don't get to ask much. But I think that's what the Supreme Court would ask. It's applicable unless you can show me specifically, and precisely, and sharply, I think was the words used by the Supreme Court, tell me where it conflicts. That's number one. Number two is when this court has evaluated the same circumstance, we haven't seen any kind of conflict between the Consumer Fraud Act and this complex area of regulation that affects insurance. Admittedly complex, admittedly within the jurisdiction in many occasions to the Department of Insurance to enforce it, but that does not mean that the consumer itself does not have a remedy. And most importantly, Judge, this wasn't, as the court properly pointed out, this was a release of a claim to a third party. This had nothing to do with a denial of benefits. Good morning, Your Honors. Kimberly Cochis on behalf of Defendants, Applebee's, Progressive Garden State Insurance Company, and Brian Barbosa. Right. So assume as we must that everything in the complaint is true. Is it, can it really be the case, since it's alleged, can it really be the case that an insurance agent can go to somebody's home, tell them a bald-faced lie, get them to sign a fraud release, and the consumer has no private remedy or action they can bring under the Consumer Fraud Act? In the facts of this case, which I'm not sure the plaintiff went that far to allege that, but here... That's how I read it. I read it, I mean, Barbosa goes, tells them I'm here to help you, tells them I'm here to expedite your claim, here sign all this paperwork, and finds out after the fact it wasn't paperwork to expedite my claim. I got 400 bucks because I signed the release because he lied to me. That's what it seems to be saying. Well, plaintiff has redressed. Plaintiff, one, has brought an negligence claim against Mr. Favaro and can argue that the release was obtained through fraud. That's not what's good for us. Right. That doesn't speak to the fraud, the alleged fraud by Progressive through its agent. Well, the third-party release and the statutes that govern Progressive's behavior with respect to obtaining a third-party release are specifically governed by the Unfair Claims Settlement Practices Act. But that doesn't really address it. In Lemoletto, the Supreme Court of New Jersey said, these things are all cumulative. So the fact that there's a regulation here that doesn't have a private right of action, we're going to say the CFA has a private right of action. After Lemoletto, how do you get around that? Well, in Lemoletto, the court specifically did not address whether or not benefits and claims relating to benefits were covered under the CFA or not. It's not a claim relating to benefits. There is no denial of benefits here. Well, that's absolutely right, Your Honor. This claim just doesn't fit under the Consumer Fraud Act because... No, it doesn't fit as a categorization of denial of benefits. I mean, Judge Schipp relied on the Miska case for a proposition of denial of benefits is not included in the Consumer Fraud Act. But that's not what this is, is it? If it's not about benefits, then it's not about Progressive's policy with plaintiff. And it's not about deception. It's about consumer deception and misrepresentation in the performance of an insurance contract, which under Weiss, we said, is included. We predict, as the New Jersey Supreme Court would say, performance under the insurance contract, and deception falls squarely under Consumer Fraud Act. This isn't about performance under Plaintiff's policy with Progressive. That's the entire point. It has nothing to do with the... And so, he's saying, I'm dealing with your claim, I'm here to help you. Mr. Barbosa was there on behalf of Frank Favaro, which is very clear on the release. When Mr. Barbosa... He's not Frank Favaro's agent, he's the Progressive agent. It's actually a tripartite relationship where he's acting on behalf of Progressive and Mr. Favaro. Right. So let's stick with that. That's the point. I understand their claim to be exactly that, that Progressive took advantage of the fact that it covered me, the plaintiff victim, and the tort cheeser, and made me believe they were here in their agency with respect to me and my claim, when in fact they were representing Favaro's interests and took me in. That is the very nature of the claim. Since that is the very nature of the claim, the assertion being you abused that relationship and defrauded me, how is that a quote, denial of benefits issue and not just a straight up fraud claim? You came and you lied to me. Well, it might be a straight up fraud claim, but that's not what we're looking at here. We're looking under the Consumer Fraud Act, and the Consumer Fraud Act, it has to do with the sale of goods or services. And here, with respect to the sale, there is no sale of goods or services. Why is it that it was performance of an insurance contract that's included? We have precedent. Weiss was decided in 2007. Since that time, the New Jersey Superior Court in MISCA... The Superior Court in MISCA, because there they said the denial of benefits is not unconscionable. There was no allegation of fraud there. It's a clear denial of benefits. You can't read MISCA to apply to a fraud situation. It just isn't there. Well, in the court in Grinnelly, also, and that was a fraud situation where the court       It's a fraud claim. It's a fraud claim. It's a fraud claim. It's a fraud claim. It's not covered under the Consumer Fraud Act, but here, we've got to take a step back. We're talking about a release of third-party benefits. The Consumer Fraud Act wasn't intended to cover any third-party transaction. We'd be extending the CFA. It's not a third-party transaction. I understand her claim to be not that you did wrong by Mr. Favaro and I'm a third party and upset by it. I understand her claim to be I had a contract with you. You were supposed to be taking care of me. You pretended you were taking care of me. You were really taking care of him, and you lied to me in the process. Now, let's just accept, as we have to, that that is the nature of the complaint, and it's true. Okay? If all that is true, how does it help you to point to Favaro when she's also represented by Progressive and that's what she's complaining about? Plaintiff alleges that Mr. Roboso, on behalf of Progressive, came and adjusted Plaintiff's auto damage claim. At the same time, Plaintiff also met with Mr. Roboso to talk about the third-party release. Mr. Roboso was wearing several hats. We read a different complaint. I didn't read her to say I met with Mr. Roboso, and he adjusted my claim. I understand her to be saying I met with Mr. Roboso because he said he was going to adjust my claim, but he was lying to me, and he was really tricking me and getting a release from me. Well, I think that the complaint is not that clear, but when Mr. Roboso Well, let's assume for the sake of discussion, we thought it was that clear. All right? And just take that as the factual basis. Take that as the factual basis. How is it, especially in light of the Lemeletto, where the New Jersey Supreme Court said, we view the CFA as expanding citizens' rights as private attorneys general to fight fraud. In light of that kind of language and our own Weiss language, how is this not kind of the classic case for a CFA claim? In this case, Mr. Roboso was not selling goods or services, correct? He wasn't performing under Progressive's policy. This case has nothing to do with Progressive's policy with Plaintiff. It doesn't?  The release is only about third-party claims. I'm talking about a release. I'm talking about he knocks on the door. I'm Mr. Roboso. I'm here to help you. I'm going to expedite your claim. I'm going to expedite your claim. I am your insurance company. That's what he said he's doing. So isn't he performing on the contract? No, he's not. This complaint is all about this third-party release. He's not performing under the contract. He's performing under Mr. Favaro's contract potentially, but not under Plaintiff's first-party contract. Then he's lying to Plaintiff. Because he said he's going to expedite her claim. That's what he said he's there for. And Plaintiff doesn't plead that that's actually a misrepresentation. He doesn't? No, he doesn't. But even if we believe that when she says in the complaint, he came to the door, told me he was there to process my claim, and really tricked me into signing a fraud release, even if we believe that what she's really saying is we thought he was there for us, but really he was there for Progressive and for Favaro. He was protecting Progressive's bottom line by giving me $400 and a kick in the pants. If we believe that that's what's going on, how do you get from there to saying, well, this doesn't have anything to do with her policy? It's the only reason he got in the door. Mr. Barbaro, as Your Honor pointed out, the release does not release Progressive. It only releases Mr. Favaro. True, but that seems an odd thing to say. We get the advantage of the lie. In other words, we told you that this was about your claim. Really it was this release, which you didn't read or properly understand, and it was about Favaro. But because it was about Favaro, it wasn't about your claim, so you're not a consumer. That seems to be your argument, is it? Well, that is part of the argument. Isn't that an odd thing to say? Our guy can come and lie, and because of the document that we tricked you into signing says something different. You're not covered by the statute. Doesn't that kind of seem to you like a fundamental undermining of the purpose of the CFA? Not in this case, because of these facts, which is this isn't about Progressive's relationship or policy with Plaintiff. If it were the inverse— He says it is, and it's a motion to dismiss. I guess we're not making ourselves clear. Well, on the facts of this case, though, if that was true, then any time you had a contractual relationship with somebody, if you entered into a new contract or if you had any negotiations or if you had any other dealings between those parties, then those would all be covered under the CFA with respect to that policy. If you misrepresent and commit fraud and deception and unconscionable behavior, yes. Yes. Or maybe not. The question would be, is it in connection with the subsequent performance of the contract you had? You seem to want to read that language out of the Consumer Fraud Act. I don't want to read it out. Well, if it's in the act, and she says he comes representing to me that this is in connection with my policy, that they're executing on my policy, on my agreement, I'm just— I don't understand if the claim in the complaint is they came representing they were there on my contract to deal with my claim under the contract I had with them. Why do you keep saying it had nothing to do with that contract? I'm just missing it. Well, if it did have to do with the contract, then the district court is correct. And this would—if there was a dealing with the contract, all that was left is benefits under the contract, correct? Because it's already been sold. We know that. So this, with the subsequent performance, the only thing left to perform under the contract would be benefits under the contract. So here, then, the district court would be correct. That what would have left is let her to file a claim and proceed forward. It's not that the only thing left would be benefits. It's the whole relationship of an insurer to have an investigation done and to file a claim and to have the claim determined and to get the loss, et cetera, et cetera. It's the whole gamut. It's the performance. You're absolutely right, Your Honor. And that's exactly right. In the first-party context, plaintiff could have filed a claim and asked for benefits. And, in fact, I think she did file a claim. So she was kind of cut off at the pass. She was only cut off in the only allegations in the complaint. She was only cut off for making third-party claims. She was not prohibited in any way for making first-party claims. True enough. But if that's assumed that were true, why isn't that just a so what? If they are using the cover of their contract as a way to defraud her out of her third-party claim, why isn't that just as much bearing on the execution of their contract as a first-party claim? In both instances, they are there using the existence of their contract with her and their purported intent to work with her in the execution of that contract to get what they want. So what difference does it make? If Your Honor is correct and that this is about first-party benefits under the contract relating to this release, then it's about the denial of benefits and the district court decision was correct. We're talking to us, so maybe it's not helpful. All right. Thank you. All right. No rebuttal. We'll call our next case. Bistrian versus Warden Troy.